IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| ZAO ODESSKY KONJATSCHNYI ZAWOD, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12cv515 (JCC/IDD) |
| | ) | |
| SIA "BALTMARK INVEST," *et al*., | ) ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant SIA
"Baltmark Invest"'s ("Baltmark") Motion to Dismiss ("Motion").
[Dkt. 148.]  For the following reasons, the Court will grant
Defendant's Motion.

**I.  Background**

This case involves a Trademark Cancellation petition
initiated by Plaintiff, ZAO Odessky Konjatschnyi Zawod
("Plaintiff" or "Odessky") seeking cancellation of Trademark
Registration No. 2885912, which is currently held by Defendant
Baltmark.  The cancellation proceeding was consolidated before
the Trademark Trial and Appeal Board ("TTAB") with Baltmark's
predecessor in interest's opposition to Odessky's Trademark
Application Serial No. 78/240612.  The TTAB dismissed Odessky's

petition to cancel, sustained Baltmark's predecessor in interest's opposition and refused registration to Odessky. Odessky now petitions this Court to consider the application on the merits, and asks this Court to cancel Baltmark's Trademark Registration No. 2885912 and dismiss Baltmark's opposition to Trademark Application Serial No. 78/240612.

      A.   <u>Factual Background</u>

          1.   <u>Parties and disputed trademarks</u>

Plaintiff Odessky is a Ukrainian Corporation.  (Am. Compl. ¶ 2)  Defendant Baltmark is a Latvian corporation.  (Am. Compl. ¶ 3.)  Defendants Global Closed Joint Stock Company ("Global CJSC") and ZAO "Gruppa Predpriyatij Ost" ("OST") are both Russian closed joint-stock companies.  (Am. Compl. ¶¶ 4-5.)

On December 12, 2002, OST filed a trademark application in the Russian Federation, Application No. 2002731063 to register "the printed word 'SHUSTOV' displayed on a bell-shaped design."  (Am. Compl. ¶ 28.)  On March 21, 2003, the word "SHUSTOV" displayed on a bell-shaped design was registered to OST in the Russian Federation, Certificate No. 240948 for use in connection with "alcoholic beverages; alcoholic beverages comprising fruits; spirits; honey drink; peppermint nastoyka; sake; rice spirit; gin; rum; bitter nastoyka; liqueurs; whiskey; brandy; aperitifs included in class 33; and vodka."  (Am. Compl. ¶ 29.)

2

On April 22, 2003, Odessky filed U.S. Application Serial No. 78/240612 to register on the Principal Register "the SHUSTOFF mark, in typed form, for alcoholic beverages (except beers); aperitifs; distilled liquors; spirits; wines; whisky; vodka; gin; cocktails; liqueurs; distilled beverages; bitters (schnapps and liqueurs); rum; liqueurs and spirits (digestives); alcoholic extracts."  (Am. Compl. ¶ 124.)

On May 23, 2003, OST filed U.S. Application Serial No. 76/519958 pursuant to Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(e), which allows the holder of a duly registered foreign trademark to apply for a U.S. trademark.[1]  In its application, OST asserted a priority date of December 11, 2002 – the date of OST's application to register the SHUSTOV mark in the Russian Federation - pursuant to Section 44(d) of the Lanham Act, 15 U.S.C. § 1126(d).[2]  (Am. Compl. ¶ 31; Am. Compl. Ex. A at 3 [Dkt. 146-1].)  OST alleged an intent to use the SHUSTOV mark on or in connection with "alcoholic beverages; alcoholic beverages comprising fruits; spirits; honey drink; peppermint nastoyka;

---

[1] "Under Section 44(e), the foreign applicant must declare a bona fide intent to use the mark in the United States, but the registration may issue without actual use."  *High Voltage Beverages, LLC v. Coca-Cola Co.*, No. 3:08cv367, 2011 WL 831523, at *5 (W.D.N.C. March 3, 2011) (citing *Imperial Tobacco, Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1582 (Fed. Cir. 1990))

[2] Section 44(d) of the Lanham Act, 15 U.S.C. § 1126(d) provides that "an applicant who has registered a mark with certain foreign registries . . . may claim priority in the United States as of the date of the foreign filing if the applicant files an application with the PTO within six months of that date."  *Humanoids Group v. Rogan*, 375 F.3d 301, 303 n. 2 (4th Cir. 2004).

sake; rice spirit; gin; rum; bitter nastoyka; liqueurs; whiskey brandy; aperitifs; and vodka." (Am. Compl. ¶ 32.)

On March 19, 2004, OST amended the identification of goods in connection with the SHUSTOV mark to "alcoholic beverages; namely distilled spirits; distilled rice spirits; aperitif wines; alcoholic aperitif bitters; alcoholic honey drink; peppermint schnapps; alcoholic fruit-based beverages; sake; gin; run; liqueurs; whiskey; brand; vodka in International Class 33." (Am. Compl. ¶ 68.) On September 21, 2004, the word "SHUSTOV" displayed on a bell-shaped design (*see* below) was registered to OST, U.S. Registration No. 2885912 for use in connection with the goods enumerated in OST's amended identification. (Am. Compl. ¶ 127.)



³

2. <u>Proceedings before the TTAB</u>

On July 28, 2004, OST filed its Notice of Opposition, Opposition No. 91161570, to Odessky's U.S. Application Serial No. 78/240612 – the SHUSTOFF mark – "on the ground of likelihood of confusion" with OST's then-pending SHUSTOV mark and bell-shaped design. (Am. Compl. ¶ 126.) On February 22, 2007, Odessky filed a Petition for Cancellation of U.S. Registration

---

³(Am. Compl. Ex. A at 3.)

No. 2885912.  (Am. Compl. ¶ 131.)  The TTAB consolidated these proceedings on November 9, 2007.  (Am. Compl. ¶ 132.)  On December 18, 2008 the TTAB granted OST's motion to "amend its notice of opposition to assert its issued Registration No. 2885912."  (Am. Compl. Ex. A at 27.)  On February 16, 2010, Odessky filed a motion to amend its answer/amended answer or counterclaim to allege that OST abandoned U.S. Registration No. 2885912 due to nonuse of the SHUSTOV trademark, specifically nonuse of the trademark on any product other than vodka.  (Am. Compl. ¶ 135.)

On February 8, 2012, the TTAB issued a decision dismissing Odessky's petition to cancel, sustaining OST's opposition and refusing registration of Odessky's Application Serial No. 78/240612.[4]  (Am. Compl. Ex. A at 37.)

### 3.   Assignment of the Trademark

While the proceedings before the TTAB were ongoing, on July 30, 2010, OST merged with ZAO "GEOCOM".  (Am. Compl. ¶ 162.)  The resultant entity was registered in the Russian Federation as Global CJSC.  (Am. Compl. ¶ 177.)  On March 15, 2012, OST assigned U.S. Registration No. 2885912 to Global CJSC. (Am. Compl. ¶ 6.)  The same day, Global CJSC assigned U.S. Registration No. 2885912 to Baltmark.  (Am. Compl. ¶ 6.)

---

[4] On August 20, 2013, the Court issued an order granting Defendant Baltmark's Motion to Transmit and Submit Record of the Trademark Trial and Appeal Board Proceedings to the Court [Dkt. 102].  [Dkt. 119.]  Accordingly, the record of the proceeding before the TTAB is part of the record of the instant action.

B.   <u>Procedural Background</u>

Plaintiff filed its Complaint against Baltmark, Global CJSC, and OST on May 8, 2012.  [Dkt. 1.]  Defendant Baltmark filed its answer on December 26, 2012.  [Dkt. 41.]  The Court held a final pretrial conference on August 15, 2013 and set a bench trial for October 8, 2013.  [Dkt. 113.]  On September 19, 2013 Plaintiff filed its First Motion to Amend / Correct Complaint and accompanying memorandum.  [Dkts. 130-31.]  On September 20, 2013, Plaintiff filed its Motion for Extension of Trial Schedule and accompanying memorandum.  [Dkts. 134-135.]  On September 27, 2013 Magistrate Judge Ivan D. Davis granted Plaintiff's motion to amend and the Court likewise granted Plaintiff's motion for to extend the trial schedule.  [Dkts. 144-45.]  On September 30, 2013, Plaintiff filed its Amended Complaint.  [Dkt. 146.]

Plaintiff's Amended Complaint contains six causes of action: (I) cancellation of registration No. 2885912 based on fraud in obtaining registration; (II) cancellation of registration No. 2885912 based on fraud in Section 8 affidavit to show continued use or excusable nonuse; (III) cancellation of registration No. 2885912 based on abandonment; (IV) dismissal of opposition to application serial No. 78/240612 due to OST's bad faith in appropriating and registering the SHUSTOV trademark; (V) dismissal of opposition to the application serial No.

6

78/240612 for lack of basis for opposition; (VI) cancellation of registration No. 2885912 because Baltmark lacks rights in the SHUSTOV trademark. [Dkt. 146.]

On October 4, 2013, Defendant filed its Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 9(b) ("Motion") and accompanying memorandum. [Dkts. 148-49.] Plaintiff filed its opposition on October 18, 2013. [Dkt. 152.]

Defendant's Motion is now before the Court.

## II.   Standard of Review

A.   Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994). In addition to the complaint, the Court may consider documents integral to and explicitly relied on in the complaint if the plaintiff does not challenge their authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). The Court may also

take judicial notice of matters of public record.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  To meet this standard, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id*.  Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

B.   Rule 9(b)

Rule 9(b) imposes a heightened pleading standard for fraud claims.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  To satisfy the heightened pleading standard of Rule 9(b), a

plaintiff must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)), *rev'd sub nom. on other grounds Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011).

Rule 9(b) has four purposes: (1) to ensure that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complaint of; (2) to protect defendants from frivolous suits; (3) to eliminate fraud actions where all facts are learned after discovery, and (4) to protect defendants from harm to their goodwill and reputation. *Harrison*, 176 F.3d at 784.  "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

C.   Review of Decision of the TTAB

Appeal from an action taken by the TTAB is in the Court of Appeals for the Federal Circuit.  15 U.S.C. § 1071(a). However, under the provisions of 15 U.S.C. § 1071(b)(1), in lieu

of an appeal a party may bring a civil action in a district court.  15 U.S.C. 1071(b)(1).  In a civil action, the "court may adjudge . . . that a registration should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear."  *Id.*

In reviewing a case under 15 U.S.C. 1071(b), the court sits in a dual capacity.  "On the one hand, the court is an appellate reviewer of facts found by the TTAB.  On the other hand, the court is a fact-finder based on new evidence introduced to the court."  *Skippy Inc. v. Lipton Inv., Inc.,* 345 F. Supp. 2d 585, 586 (E.D. Va. 2002), *aff'd* 74 Fed. App'x 291 (4th Cir. 2003).  Review of new evidence is de novo.  3 McCarthy on Trademarks and Unfair Competition, § 21:21.  The district court, must, however, afford deference to the fact-findings of the TTAB.  *Id.*  "Facts found by the TTAB are reviewed for substantial evidence."  *Swatch, S.A. v. Beehive Wholesale, L.L.C.,* 888 F. Supp. 2d 738, 745 (E.D. Va. 2012) (citing *Skippy*, 345 F. Supp. 2d at 586).  Decisions of the TTAB "are reviewed *de novo* with respect to conclusions of law."  *Glendale Intern. Corp. v. U.S. Patent & Trademark Office*, 374 F. Supp. 2d 478, 485 (E.D. Va. 2005).

### III.  Analysis

A.   Rule 9(b)

Baltmark argues that the Amended Complaint's
allegations of fraud fall short of what is required by Federal
Rule of Civil Procedure 9(b).  To state a claim of fraud on the
United States Patent and Trademark Office ("USPTO"), a Plaintiff
must plead in accordance with Rule 9(b) that "(1) a false
representation was made to the Patent and Trademark Office
regarding a material fact; (2) the registrant's knowledge or
belief that the representation was false; (3) the intention to
induce action or refraining from action in reliance on a
misrepresentation; (4) reasonable reliance on the
misrepresentation; and (5) damages proximately resulting from
such reliance." *Marshak v. Treadwell*, 58 F. Supp. 2d 551, 566
(D.N.J. 1999), aff'd 240 F.3d 184, 196 (3d Cir. 1999).

According to Baltmark, both Count I, alleging fraud in
obtaining trademark registration No. 2885912, and Count II,
alleging fraud in Baltmark's predecessor in interest's Section 8
affidavit to show continued use or excusable non-use, fail to
provide any specific facts upon which Odessky's allegations are
based.  (Mem. at 10.)  In its reply brief, Baltmark clarifies it
concedes that Odessky has sufficiently alleged the "time, place,
and contents of the allegedly false statements made by OST."
(Reply at 3.)  Baltmark further concedes that Plaintiff has
sufficiently alleged that these statements were relied upon by

11

the USPTO.  (Reply at 3.)  Baltmark thus challenges the
sufficiency of Odessky's allegations only as to the claims that
OST – Baltmark's predecessor in interest – knowingly made false
statements with the intent to deceive the USPTO.  (Reply at 3.)

Reviewing Plaintiff's Complaint de novo, the Court
agrees that Odessky has sufficiently alleged the "time, place
and contents of the false representations," as well as the
USPTO's reliance on these statements.  *In re Mut. Funds Inv.
Litig.*, 566 F.3d at 120.  Accordingly, the Court turns to the
question of knowledge of falsity and intent to deceive.

B.   Scienter

The fraud counts contained in the Amended Complaint
both require that Odessky plead and prove that Baltmark
"knowingly made false, material representations of fact and
intended to deceive" the USPTO.  *Monster Daddy LLC v. Monster
Cable Prods.*, Civil Action No. 6:10-1170-HMH, 2010 WL 4853661,
at *3 (D.S.C. Nov. 23, 2010).

Federal Rule of Civil Procedure 9(b) explains that
"malice, intent, knowledge, and other conditions[s] of mind" may
be "alleged generally."  Fed. R. Civ. P. 9(b).  "It is true that
Rule 9(b) requires particularity when pleading fraud or mistake,
while allowing . . . knowledge [to] be alleged generally."
*Iqbal*, 556 U.S. at 686 (internal quotations marks omitted).
"But 'generally' is a relative term."  *Id.*  "In the context of

Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake." *Id.* "Rule 9 merely excuses a party from pleading [state of mind] under an elevated pleading standard.  It does not give him license to evade the less rigid – though still operative – strictures of Rule 8." *Id.* Accordingly, to plead fraud on the USPTO, a plaintiff "must allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009); *Asian and Western Classics B.V. v. Selkow*, 92 U.S.P.Q. 2d 1478, 2009 WL 3678263 (T.T.A.B. 2009).

### 1.  Count I

Odessky has failed to allege sufficient underlying facts supporting its claims of knowledge and intent on the part of Baltmark.  Count I of the Amended Complaint sets forth three instances of false statement before the USPTO.  First, Odessky alleges: "On May 23, 2003, OST knowingly made a false and material representation that it had a bona fide intention to use the SHUSTOV mark in commence in the United States on or in connection with alcoholic beverages comprising fruits, spirits, honey drink, peppermint nastoyka, sake, rice spirit, gin, rum, bitter nastoyka, liqueurs, whiskey, brandy or aperitifs included in class 33." (Am. Compl. ¶ 150.) Odessky alleges, on information and belief, that this statement was false "because

13

OST never intended to use the SHUSTOV mark" in commerce in the United States, except in connection with vodka, OST "had knowledge that the statement . . . was a false representation of fact," and "OST intended to deceive the USPTO". (Am. Compl. ¶ 150.)

Second, Count I states that on May 23, 2003, "OST knowingly made a false and material representation that it knew of no other person, firm, corporation or association that had the right to use the SHUSTOV trademark in commerce . . ." (Am. Compl. ¶ 151.)  Plaintiff states, on information and belief, that this statement was false because "Odessky had the right to use the SHUSTOV trademark in commerce," OST knew this statement was false "because at least as of December 11, 2002, the priority date for Application Serial No. 76/519958, OST knew Odessky had the right to use the SHUSTOV trademark," and "OST intended to deceive the USPTO in misrepresenting its knowledge of Odessky's use and rights" in the trademark.  (Am. Compl. ¶ 151.)  Third, Odessky repeats its allegations regarding OST's intention to use the SHUSTOV mark in commerce as to an allegedly false statement made to the USPTO on March 19, 2004.  (Am. Compl. ¶ 152.)

Missing from Odessky's exhaustive recitation of the elements of its cause of action are any supporting facts suggesting knowledge or intent on the part of OST.  *See Exergen*,

575 F.3d at 1331 ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control but only if the pleading sets forth the specific facts on which the belief is reasonably based.")  While Odessky provides the factual circumstances surrounding the presentation of these statements to the USPTO, these allegations are insufficient with regards to OST's state of mind.  In *Mayfield v. National Association for Stock Car Auto Racing*, the Fourth Circuit Court of Appeals held that a plaintiff's assertion that defendant's statements "were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity" were "entirely insufficient."  674 F.3d 369, 378 (4th Cir. 2012).  The Fourth Circuit stated that this kind of "conclusory allegation – a mere recitation of the legal standard – is precisely the sort of allegation that *Twombly* and *Iqbal* rejected."  *Id.*  Likewise, Odessky's pleading merely marches through the legal standard for fraud on the USPTO; Odessky alleges, on information and belief alone, that OST made false statements, that OST knew these statements were false and that OST intended to deceive the USPTO.

Specifically, Odessky's first and third claims regarding OST's intention to use the SHUSTOV mark in commerce lack factual assertions supporting its belief.  Odessky points

to the Certificate of Label Approval ("COLA") registry, which contains applications by OST only for vodka labels and the lack of evidence before the TTAB regarding plans to market goods other than vodka as indications of OST's fraudulent intent.[5] (Opp. at 8.)  These facts, even if true, do not suffice in pleading the element of intent to deceive.  The Court cannot infer from Odessky's pleading that OST had any specific intent to defraud the USPTO.

As to Odessky's second claim – that OST knew of Odessky's priority in the mark - Odessky provides the Court with no facts from which to draw a reasonable inference of how it believes that OST knew that Odessky had superior rights.  As the TTAB has explained, when an applicant avers that it has the exclusive right to use the mark, a fraud claim against the applicant will not lie unless the applicant knew that another person "possess[ed] a superior or clearly established right to use the same or substantially identical mark" for the same or substantially the same goods or services.  *Intellimedia Sports Inc. v. Intellimedia Corp.*, 43 U.S.P.Q. 2d 1203 at *4 (1997).

In *Intellimedia*, the TTAB found that a petitioner failed to state a claim under Rule 9(b) where he plead that the applicant "knew or should have known" that the petitioner had

---

[5] "A lack of bona fide intent to use does not equate to the kind of bad faith intent to deceive needed to support a claim for fraud."  3 McCarthy on Trademarks § 19:14 (4th Ed.).

superior rights in the trademark.  *Id.* at *5.  The TTAB
explained that this allegation is insufficient "because it does
not set forth any particular facts which, if proven, would
establish that respondent believed or had no reasonable basis
not to believe" that the petitioner had superior rights in the
mark.  *Id.*  Here, Odessky has not plead any facts indicating
that OST believed that Odessky had superior rights in the mark.
Odessky's pleading indicates only that Odessky itself believed
that its rights were superior; this is insufficient to suggest
OST's specific intent.

    Accordingly, the Court will dismiss Count I.

    2.  <u>Count II</u>

    In Count II, the Amended Complaint alleges that OST
made false and material representations in its Section 8
affidavit presented to the USPTO to show excusable non-use in
connection with registration No. 2885912.  (Am. Compl. ¶ 161.)
Odessky alleges, upon information and belief, that OST's
statements that its non-use was attributable to the ongoing
litigation and the Russian government's shutdown of its
manufacturing facilities were false.  (Am. Compl. ¶ 163.)
Instead, Odessky alleges, OST's non-use was attributable, at
least in part, to corporate dissolution in the merger with
GEOCOM.  (Am. Compl. ¶ 163.)  Accordingly, Odessky alleges that
OST's statements that it made continuing efforts to use

registration No. 2885912, and intended to use that registration
in connection with the sale of various types of alcoholic
beverages in the United States were knowingly false and intended
to deceive the USPTO.  (Am. Compl. ¶ 164-65.)  Odessky further
alleges that OST knowingly withheld information from the USPTO
regarding its merger with GEOCOM and resulting corporate
dissolution.  (Am. Compl. ¶ 163.)

     The crux of Odessky's allegations is that any
representations made by OST after the corporation merged with
ZAO "GEOCOM" to form Global CJSC were necessarily fraudulent
because after the merger OST ceased to exist as a separate legal
entity.[6]  As in its claim of false statements in connection with
OST's application before the USPTO, Odessky's claim of false
statement in OST's section 8 affidavit fails to plead facts
sufficient to support a reasonable inference of OST's knowledge
or intent.

     Odessky has not set forth any facts underlying its
belief that OST knew that its affidavit of excusable non-use was
false or that it was made with intent to deceive the USPTO.
Odessky's pleading hinges upon the assertion that after the
merger with GEOCOM, any statements purportedly made on OST's
behalf were not just false, but also fraudulent.  The Court

---

[6] The issue of whether OST's merger with GEOCOM led to OST's corporate
dissolution is not currently before the Court.  The Court notes, however,
that in accepting Plaintiff's allegations as true it does not decide the
underlying issue.

disagrees.  OST's knowledge of the merger with GEOCOM does not raise any inference that statements made on behalf of OST were therefore made with the intent to defraud the USPTO.  Without any factual basis for its belief that OST knowingly and intentionally deceived the USPTO Odessky cannot prevail on its claim of fraud in OST's section 8 affidavit.

Additionally, Odessky's claim that OST intentionally withheld information from the USPTO lacks specific facts on which this allegation is based.  In *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, for example, the court considered allegations of inequitable conduct before the USPTO, which must meet the pleading standards for fraud under Rule 9(b).  CIV. JKB-09-2657, 2011 WL 2415014, at *4 (D. Md. June 10, 2011).  The court found that pleadings were deficient, explaining, "[t]he allegations thus contain no facts from which this Court could infer that Plaintiff made any deliberate decision at all about whether to disclose or withhold that information from the PTO." *Id.*  Likewise, Odessky has provided the Court with no facts suggesting that OST made a deliberate choice to withhold its change in corporate status to the USPTO.  The failure to inform the USPTO of OST's merger with GEOCOM does not equate to knowledge of wrongdoing.

Count II fails provide a plausible factual basis for Odessky's claims that OST knowingly and intentionally presented

false statements to the USPTO.  The Court will dismiss this claim.

      C.  <u>Leave to Amend</u>

      Odessky requests that if the Court finds its pleadings to be deficient, that it be granted leave to amend.  (Opp. at 15.)  On September 27, 2013, Judge Davis granted Odessky's motion to amend its Complaint.  [Dkt. 145.]  Odessky was permitted to amend its Complaint over a month and a half after the close of discovery and less than two weeks before the originally scheduled trial date on the basis of a document produced on the date discovery closed.  That document relates to the assignment of the SHUSTOV mark from Global CJSC to Baltmark.

      The Court will deny Odessky leave to amend because amendment would be both futile and prejudicial to Baltmark.  *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.").  The Court has already granted Odessky leave to amend its Complaint and rescheduled the trial date to give Odessky the opportunity to re-plead its case on the basis of the wrongfully withheld documents.  It would be prejudicial to Baltmark to allow Odessky to again amend its complaint and adjust the trial calendar accordingly.

Additionally it would be futile to allow Odessky to further amend its Complaint.  Both of Odessky's fraud claims, at issue in the present motion, were included in the original Complaint.  [Dkt. 1.]  Odessky has had an opportunity to amend its Complaint with respect to these counts.  Further amendment would be futile.  As Baltmark notes, Odessky has litigated this claim for five years beginning with the proceedings before the TTAB.  (Reply at 11.)  Odessky has had a full opportunity to engage in discovery with regards to these claims in that litigation and before this Court.  Odessky is not entitled to further amendments.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion and will dismiss Counts I and II with prejudice.

An appropriate Order will issue.

 

 

|                        | /s/                                      |
|------------------------|------------------------------------------|
| November 6, 2013       | James C. Cacheris                        |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE       |