IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
ZAO ODESSKY KONJATSCHNYI        )
ZAWOD,                          )
                                )
      Plaintiff,                )
                                )
          v.                    )    1:12cv515 (JCC/IDD)
                                )
SIA "BALTMARK INVEST," et       )
al.,                            )
                                )
      Defendants.               )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff ZAO

Odessky's ("Plaintiff" or "Odessky") Motion for Summary

Judgment, [Dkt. 155], and Defendant SIA "Baltmark Invest"'s

("Defendant" or "Baltmark") Motion for Summary Judgment, [Dkt.

158].  For the following reasons, the Court will deny Odessky's

Motion for Summary Judgment and grant in part and deny in part

Baltmark's Motion for Summary Judgment.

**I.  Background**

This case involves a Trademark Cancellation petition

initiated by Odessky seeking cancellation of Trademark

Registration No. 2885912, which is currently held by Defendant

Baltmark.  The cancellation proceeding was consolidated before

the Trademark Trial and Appeal Board ("TTAB") with Baltmark's

1

predecessor in interest's opposition to Odessky's Trademark
Application Serial No. 78/240612.  The TTAB dismissed Odessky's
petition to cancel, sustained Baltmark's predecessor in
interest's opposition and refused registration to Odessky.
Odessky now petitions this Court to consider the application on
the merits, and asks this Court to cancel Baltmark's Trademark
Registration No. 2885912 and dismiss Baltmark's opposition to
Trademark Application Serial No. 78/240612.

A.   <u>Factual Background</u>

1.   <u>Parties and disputed trademarks</u>

Plaintiff Odessky is a Ukrainian Corporation.  (Joint
Stipulation of Undisputed Facts ("Joint Facts") ¶ 1.)  Defendant
Baltmark is a Latvian corporation.  (Joint Facts ¶ 2.)
Defendants Global Closed Joint Stock Company ("Global CJSC") and
ZAO "Gruppa Predpriyatij Ost" ("OST") are both Russian closed
joint-stock companies.  (Joint Facts ¶¶ 3-4.)

On December 12, 2002, OST filed a trademark
application in the Russian Federation, Application No.
2002731063 to register "the printed word 'SHUSTOV' displayed on
a bell-shaped design."  (Joint Facts ¶ 6.)  On March 21, 2003,
the word "SHUSTOV" displayed on a bell-shaped design was
registered to OST in the Russian Federation, Certificate No.
240948 for use in connection with "alcoholic beverages;
alcoholic beverages comprising fruits; spirits; honey drink;

2

peppermint nastoyka; sake; rice spirit; gin; rum; bitter
nastoyka; liqueurs; whiskey; brandy; aperitifs included in class
33; and vodka." (Joint Facts ¶ 7.)

On April 22, 2003, Odessky filed U.S. Application
Serial No. 78/240612 to register on the Principal Register "the
SHUSTOFF MARK, IN TYPED FORM, for alcoholic beverages (except
beers); aperitifs; distilled liquors; spirits; wines; whisky;
vodka; gin; cocktails; liqueurs; distilled beverages; bitters
(schnapps and liqueurs); rum; liqueurs and spirits (digestives);
alcoholic extracts." (Joint Facts ¶ 5.)

On May 23, 2003, OST filed U.S. Application Serial No.
76/519958 pursuant to Section 44(e) of the Lanham Act, 15 U.S.C.
§ 1126(e), which allows the holder of a duly registered foreign
trademark to apply for a U.S. trademark.[1]  In its application,
OST asserted a priority date of December 11, 2002 – the date of
OST's application to register the SHUSTOV mark in the Russian
Federation.[2]  (Joint Facts ¶ 8; Def. Mem. Ex. A "TTAB Opinion" at
3 [Dkt. 159-1].)  OST alleged an intent to use the SHUSTOV mark
on or in connection with "alcoholic beverages; alcoholic

---

[1] "Under Section 44(e), the foreign applicant must declare a bona fide intent
to use the mark in the United States, but the registration may issue without
actual use." *High Voltage Beverages, LLC v. Coca-Cola Co.*, No. 3:08cv367,
2011 WL 831523, at *5 (W.D.N.C. Mar. 3, 2011) (citing *Imperial Tobacco, Ltd.
v. Philip Morris, Inc.*, 899 F.2d 1575, 1582 (Fed. Cir. 1990)).
[2] Section 44(d) of the Lanham Act, 15 U.S.C. § 1126(d) provides that "an
applicant who has registered a mark with certain foreign registries . . . may
claim priority in the United States as of the date of the foreign filing if
the applicant files an application with the PTO within six months of that
date." *Humanoids Group v. Rogan*, 375 F.3d 301, 303 n.2 (4th Cir. 2004).

beverages comprising fruits; spirits; honey drink; peppermint nastoyka; sake; rice spirit; gin; rum; bitter nastoyka; liqueurs; whiskey brandy; aperitifs; and vodka." (Joint Facts ¶ 8.)

On March 19, 2004, OST amended the identification of goods in connection with the SHUSTOV mark to "alcoholic beverages; namely distilled spirits; distilled rice spirits; aperitif wines; alcoholic aperitif bitters; alcoholic honey drink; peppermint schnapps; alcoholic fruit-based beverages; sake; gin; run; liqueurs; whiskey; brand; vodka in International Class 33." (Joint Facts ¶ 13.) On September 21, 2004, the word "SHUSTOV" displayed on a bell-shaped design (*see* below) was registered to OST, U.S. Registration No. 2885912 for use in connection with the goods enumerated in OST's amended identification. (Joint Facts ¶ 14.)



3

2.   <u>Proceedings before the TTAB</u>

On July 28, 2004, OST filed its Notice of Opposition, Opposition No. 91161570, to Odessky's U.S. Application Serial No. 78/240612 – the SHUSTOFF mark - "on the grounds of priority and likelihood of confusion" with OST's then-pending SHUSTOV

---

[3](TTAB Opinion at 3.)

mark and bell-shaped design.  (Joint Facts ¶ 16.)  On February 22, 2007, Odessky filed a Petition for Cancellation of U.S. Registration No. 2885912.  (Joint Facts ¶ 22.)  The TTAB consolidated these proceedings on November 9, 2007.  (Joint Facts ¶ 23.)  On December 18, 2008 the TTAB granted OST's motion to "amend its notice of opposition to assert its issued Registration No. 2885912."  (TTAB Opinion at 27.)  On February 16, 2010, Odessky filed a motion to "amend its answer/amended answer or counterclaim to allege that OST abandoned U.S. Registration No. 2885912" due to nonuse of the SHUSTOV trademark, specifically nonuse of the trademark on any product other than vodka.  (Joint Facts ¶ 26.)

On February 8, 2012, the TTAB issued a decision dismissing Odessky's petition to cancel, sustaining OST's opposition and refusing registration of Odessky's Application Serial No. 78/240612.[4]  (TTAB Opinion at 37.)

### 3.   Assignment of the Trademark

While the proceedings before the TTAB were ongoing, on July 30, 2010, OST merged with ZAO "GEOCOM".  (Joint Facts ¶ 31.)  The resultant entity was registered in the Russian Federation as Global CJSC.  (Joint Facts ¶ 31.)  On March 15, 2012, OST assigned U.S. Registration No. 2885912 to Global CJSC.

---

[4] On August 20, 2013, the Court issued an order granting Defendant Baltmark's Motion to Transmit and Submit Record of the Trademark Trial and Appeal Board Proceedings to the Court.  [Dkt. 119.]  Accordingly, the record of the proceeding before the TTAB is part of the record of the instant action.

(Joint Facts ¶ 37.)  The same day, Global CJSC assigned U.S. Registration No. 2885912 to Baltmark.  (Joint Facts ¶ 38.)

       B.   <u>Procedural Background</u>

Plaintiff filed its Amended Complaint against Baltmark, Global CJSC, and OST on September 30, 2013.  [Dkt. 146.]  Plaintiff's Amended Complaint contains six causes of action: (I) cancellation of registration No. 2885912 based on fraud in obtaining registration; (II) cancellation of registration No. 2885912 based on fraud in Section 8 affidavit to show continued use or excusable nonuse; (III) cancellation of registration No. 2885912 based on abandonment; (IV) dismissal of opposition to application serial No. 78/240612 due to OST's bad faith in appropriating and registering the SHUSTOV trademark; (V) dismissal of opposition to the application serial No. 78/240612 for lack of basis for opposition; (VI) determination that Baltmark has no rights in the SHUSTOV mark because the assignment to Baltmark from CJSC was invalid.  [Dkt. 146.]

On October 4, 2013, Baltmark filed a motion to dismiss Counts I and II for failure to state a claim.  [Dkt. 148.]  The Court held a hearing on Baltmark's motion on November 1, 2013 and took the matter under advisement.  [Dkt. 154.]  On November 6, 2013, the Court issued a memorandum opinion and order granting Baltmark's motion and dismissing Counts I and II with prejudice.  [Dkts. 161-162.]

On November 1, 2013, Odessky filed its Motion for Summary Judgment and accompanying memorandum, [Dkts. 155-156], and Baltmark filed its Motion for Summary Judgment and accompanying memorandum, [Dkts. 158-159].  On November 15, 2013, Odessky filed its opposition to Baltmark's motion, [Dkt. 165], and Baltmark filed its opposition to Odessky's motion, [Dkt. 164].  Odessky filed its reply on November 20, 2013.  [Dkt. 168.]  Baltmark filed its reply on November 20, 2013.  [Dkt. 167.]

Odessky's Motion for Summary Judgment and Baltmark's Motion for Summary Judgment on Count III are now before the Court.

## II.   Standard of Review

### A.   Summary Judgment

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists

"if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

8

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and quotation marks omitted). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment, nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Continental Air., Inc. v. United Air., Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (citations and quotation marks omitted).

    B.   <u>Review of Decision of the TTAB</u>

Appeal from an action taken by the TTAB is in the Court of Appeals for the Federal Circuit. 15 U.S.C. § 1071(a). However, under the provisions of 15 U.S.C. § 1071(b)(1), in lieu of an appeal a party may bring a civil action in a district court. 15 U.S.C. § 1071(b)(1). In a civil action, the "court may adjudge . . . that a registration should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear." *Id.*

In reviewing a case under 15 U.S.C. § 1071(b), the court sits in a dual capacity.  "On the one hand, the court is an appellate reviewer of facts found by the TTAB.  On the other hand, the court is a fact-finder based on new evidence introduced to the court."  *Skippy Inc. v. Lipton Inv., Inc.,* 345 F. Supp. 2d 585, 586 (E.D. Va. 2002), *aff'd* 74 F. App'x 291 (4th Cir. 2003).  Review of new evidence is de novo.  3 McCarthy on Trademarks and Unfair Competition, § 21:21 (4th ed.).  The district court, must, however, afford deference to the fact-findings of the TTAB.  *Id.*  "Facts found by the TTAB are reviewed for substantial evidence."  *Swatch, S.A. v. Beehive Wholesale,* L.L.C., 888 F. Supp. 2d 738, 745 (E.D. Va. 2012) (citing *Skippy*, 345 F. Supp. 2d at 586).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Skippy*, 345 F. Supp. 2d at 587 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  Decisions of the TTAB "are reviewed *de novo* with respect to conclusions of law."  *Glendale Intern. Corp. v. U.S. Patent & Trademark Office*, 374 F. Supp. 2d 478, 485 (E.D. Va. 2005).

## III.  Analysis

Odessky argues that it is entitled to summary judgment against Baltmark on all counts because Baltmark has no rights in the SHUSTOV mark.  Baltmark argues that it is entitled to

10

summary judgment on Count III, Odessky's abandonment claim.  The Court will consider each claim in turn.

### A.   Baltmark's Interest in the SHUSTOV Mark

Odessky argues that it is entitled to summary judgment against Baltmark on all remaining counts because Baltmark lacks rights in the SHUSTOV mark.  According to Odessky, the SHUSTOV mark was sold from Global CJSC to Baltmark pursuant to an invalid authorization at Global CJSC's May 12, 2011 shareholders' meeting by Global CJSC's sole shareholder Yulia Victorovna Zaitseva ("Zaitseva").  (Pl. Mem. at 1.)  Odessky argues that the Agency Contract, dated May 23, 2011, which implemented the sale, transfer and assignment of the SHUSTOV mark from Global CJSC to Baltmark, was likewise invalid.  The Agency Contract was executed on Global CJSC's behalf by Yuri Igorevich Zhupansky ("Zhupansky") pursuant to a power of attorney executed by shareholder Zaitseva.  (Pl. Mem. at 6.)

Odessky claims that the authorization of the sale at the shareholders' meeting and the Agency Contract are both invalid because the Commercial Court of Khabarovsky Territory has since found that on the date these actions occurred, Zaitseva was not a shareholder of Global CJSC; previously, on January 16, 2011, Zaitseva sold all of her shares in Global CJSC to a third party, A.V. Zhmakov ("Zhmakov").  (Pl. Mem. at 14.) According to Odessky, Global CJSC remains the holder of the

SHUSTOV mark and Baltmark has no interest in the mark.   Thus, Odessky claims that Baltmark does not have standing to oppose its registration of the SHUSTOFF mark.

Baltmark argues that the assignment was validly authorized and executed by Global CJSC under the authority of Anna Leonidova Batyreva ("Batyreva"), Global CJSC's General Director.  (Def. Opp. at 3.)  Baltmark argues that Odessky's statement of facts regarding the circumstances of the assignment is incomplete.  Baltmark contends that under Russian law, the General Director of Global CJSC could have assigned the SHUSTOV mark on her own authority, without shareholder approval.  (Def. Opp. at 10.)  Baltmark argues that the facts presented to the Court indicate that there is no genuine dispute with respect its ownership of the SHUSTOV mark.  (Def. Opp. at 10.)

The Court finds Odessky is not entitled to summary judgment based on the allegedly invalid assignment of the SHUSTOV mark.  The parties have presented conflicting evidence on the authority used to transfer the SHUSTOV mark.

In support of its motion, Odessky has submitted the Minutes of Extraordinary General Meeting of Shareholders of Global CJSC, (Pl. Mem. Ex. A [Dkt. 156-1]), Agency Contract No. 23/05, (Pl. Mem. Ex. F [Dkt. 156-6]), and the translated decision of the Commercial Court Khabarovsky Territory and a subsequent appeal (Pl. Mem. Exs. C, D [Dkts. 156-3, 156-4]).

The Minutes of the Extraordinary General Meeting of Shareholders list as an item on the agenda for May 12, 2011, approval of sale the SHUSTOV mark registered both inside and outside the Russian Federation.  (Pl. Mem. Ex. A.)  The minutes relate that 100% of the shareholders – Zaitseva - voted in favor of the resolution to approve a "transaction on alienation of the trademarks" and to entrust General Director Batyreva to issue a notarized power of attorney to Elena Sorokina ("Sorokina") – Baltmark's representative – to take necessary actions to carry out the transaction.  (Pl. Mem. Ex. A.)

Agency Contract No. 23/05, dated May 23, 2011, states that Zhupansky, acting on behalf of Global CJSC based on a power of attorney issued by Zaitseva, "shall perform legal and other actions as specified in this Contract in order to implement the entire package of measures necessary to execute the Decisions taken at the extraordinary meeting of shareholders" of Global CJSC to assign trademarks including the SHUSTOV mark to Baltmark in exchange for $500,000.00.[5]  (Pl. Mem. Ex. F.)  Additionally, the Decision of the Commercial Court of Khabarovsky Territory, issued on February 27, 2012, states that on February 10, 2011, Zaitseva was removed as General Director of Global CJSC.  (Pl. Mem. at 7.)

---

[5] The contract at issue is labeled Agency Contract because it establishes an agency relationship between the principal – Sorokina – and the agent – Zhupansky – for purposes of carrying out measures needed to assign the trademarks at issue, including the SHUSTOV mark to Baltmark.

In sum, Odessky has presented evidence that the authorization at the shareholders meeting and power of attorney executed by Zaitseva for the Agency Contract were the legal basis for the transfer of the mark.  (Declaration of Mikhail Semenovich Bologov [Dkt. 156-5]; Minutes of Extraordinary General Meeting of Shareholders [Dkt. 156-1].)  In Odessky's view, the Russian court's finding that Zaitseva had sold her shares of Global CJSC at the time these authorizations occurred invalidates her approval of the sale to Baltmark during the shareholders meeting and the power of attorney she issued to Zhupansky.  (Pl. Mem. Exs. C, D [Dkts. 156-3, 156-4]).

Baltmark, to the contrary, claims that under Russian law, Batyreva had the authority to transfer the SHUSTOV mark.  (Def. Opp. at 10.)  No shareholder approval was required.  In support of its claim, Baltmark has provided the Declaration of Maxim A. Titarenko, and a copy of the power of attorney Global CJSC issued to Sorokina.  (Def. Opp. Ex. 1 [Dkt. 164-1].)  The Titarenko Declaration states that on June 1, 2011, Batryeva in her role as General Director issued a power of attorney to Sorokina to take steps required to carry out the trademark assignment.  (Titarenko Decl. [Dkt. 164-1]).[6]  The power of

---

[6] The Court notes that two separate Powers of Attorney are at issue in this matter.  Odessky relies on a power of attorney Zaitseva issued to Zhupansky to enter into the Agency Contract No. 23/05, which provides that for purposes of executing the assignment, Zhupansky will act as Sorokina's agent and that Sorokina will pay $500,000.00 for the transfer of the marks.  Baltmark relies

attorney Batyreva issued to Sorokina was notarized and states "the person who signed this Power of Attorney has been identified and the legal capacity has been verified." (Def. Opp. Ex. A [Dkt. 164-1].)  The Titarenko Declaration further relates that Batryeva's name was listed on the Uniform State Register of Legal Entities as the General Director of Global CJSC on the date of the assignment.  (Titarenko Decl. ¶¶ 17, 22.)  As of June 26, 2012, a date after the Commercial Court of Khabarovsky Territory issued its decision, Batyreva's name remained in the Uniform State Register as General Director. (Def. Opp. Ex. B [Dkt. 164-1].)  Baltmark claims that "the assignment could have only been authorized by Global CJSC's General Director.  Global CJSC's General Director, A.L. Batyreva, did in fact authorize the assignment" as evidenced by the minutes of the shareholder meeting, and the power of attorney issued to Sorokina.[7]  (Def. Opp. 10-11.)

Baltmark has presented sufficient evidence to withstand a motion for summary judgment on these grounds; the evidence concerning what authority was used to transfer the

on a power of attorney issued by Batyreva on behalf of Global CJSC authorizing Sorokina to do all legal proceedings required to assign the trademark.
[7] The parties have not fully briefed the role of the general director under Russian corporate law or the extent of her powers.  In support of its arguments regarding the role of general director, Baltmark provides only the Titarenko Declaration, with no supporting statutory or case law.  [Dkt. 164-1.]  Because Baltmark has not moved for summary judgment, it only opposes Odessky's motion for summary judgment, the Court declines to consider whether, as a matter of law, Batyreva's authorization of the assignment of the SHUSTOV mark was valid.

SHUSTOV mark is disputed. Based on Baltmark's evidence, a reasonable fact-finder could conclude that the assignment from Global CJSC to Baltmark was valid.

Moreover, Odessky is not entitled to summary judgment on these grounds because Baltmark has presented evidence that Global CJSC ratified the transaction. Baltmark has submitted a Declaration from Brian M. Gaynor showing that Global CJSC accepted $500,000.00 in payment for the assignment of the SHUSTOV mark and other trademarks. (Def. Opp. Ex. A [Dkt. 164-1].) Ratification is the "adoption and the confirmation by one person of an act or contract performed or entered into [o]n his behalf by another who at the time assumed to act as his agent." *Nationwide Mut. Ins. Co. v. Powell*, 292 F.3d 301, 205 (4th Cir. 2002). Ratification requires three elements to be present: (1) acceptance by the putative principal of the acts of the would-be agent; (2) full knowledge of the facts by the putative principal; (3) circumstances demonstrating the putative principal's intent to accept the act or contract. *Id.*

The Gaynor Declaration states that on May 23, 2011, Zhupansky, acting on behalf of Global CJSC, accepted a payment of $500,000.00 from Sorokina. (Gaynor Decl. [Dkt. 155-2].) Global CJSC would only be entitled to this payment because of the sale, assignment and transfer of the SHUSTOV mark to Baltmark. (Def. Opp. at 14.) Baltmark's evidence suggests that

16

even if Zaitseva was acting without authority in approving the
sale of the SHUSTOV mark, by accepting the payment for the
assignment Global CJSC ratified the transaction.  Accordingly,
the Court finds that Odessky is not entitled to summary judgment
on grounds that Baltmark does not have rights in the SHUSTOV
mark.  The evidence before the Court shows that a reasonable
fact-finder could conclude that Baltmark is the owner of the
SHUSTOV mark.  Accordingly, the Court will deny Odessky's motion
for summary judgment.

    B.   <u>Abandonment (Count III)</u>

Baltmark asserts that Odessky's abandonment claim is
barred by failure to observe the TTAB's compulsory counterclaim
rule.  Baltmark argues that abandonment should have been timely
raised before the TTAB.  Odessky argues that the Court may
consider new issues not previously brought before the TTAB.
(Pl. Opp. at 7.)

Under Trademark Rule 2.106(2)(i),

[a] defense attacking the validity of any
one or more of the registrations pleaded in
the opposition [Registration No. 2885912 in
this case] shall be a compulsory
counterclaim if grounds for such
counterclaim exist at the time when the
answer is filed . . . If grounds for a
counterclaim are learned during the course
of the opposition proceedings, the
counterclaim shall be pleaded promptly after
the grounds therefor are learned.

*Skippy*, 345 F. Supp. 2d at 588 (quoting 37 C.F.R. §
2.106(2)(i)).  Failing to abide by the TTAB's compulsory
counterclaim rule bars subsequent assertion of a challenge to
the validity of a registered mark before the TTAB or in federal
court.  3 McCarthy on Trademarks and Unfair Competition § 20:23
(4th ed.); *see Skippy*, 345 F. Supp. 2d at 589; *Sprinklets Water
Center, Inc. v. McKesson Corp.*, 806 F. Supp. 656, 663 (E.D.
Mich. 1992); *Vitaline Corp. v. General Mills, Inc.*, 891 F.2d
273, 276 (Fed. Cir. 1989).

        Baltmark further contends that the failure to raise an
issue before the TTAB bars subsequent assertion of that claim in
this Court, regardless of whether that claim was a compulsory
counterclaim.  Baltmark argues that "in civil review of a TTAB
decision in federal court, an appellant can present new evidence
not presented in the TTAB, but it cannot raise legal issues it
did not raise below." (Def. Mem. at 11.)  Baltmark ignores,
however, more recent precedent finding that litigants may bring
both new evidence and additional claims before the district
court.  *See Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
525 F.3d 8, 14-15 (D.C. Cir. 2008); *CAE, Inc. v. Clean Air
Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001); 3 McCarthy on
Trademarks and Unfair Competition § 21:20 (4th ed.).

        Baltmark invokes *Wilson Jones Co v. Gilbert & Bennett
Mfg. Co.*, 332 F.2d 216, 218 (2d Cir. 1964) in support of its

18

argument that any claims not raised before the TTAB are barred before this Court. (Def. Mem. at 11.) Additionally Baltmark cites to case law relying on *Gold Seal Co v. Weeks*, 129 F. Supp. 928 (D.D.C. 1955). (Def. Mem. at 11.) As the Court in *Aktieselskabet* explained, *Wilson Jones* relied on *Gold Seal*, a case which pre-dated amendments to Lanham Act § 21(b), 15 U.S.C. § 1071(b), which provides for review of TTAB decisions by the district court. Section 1071(b) as amended, provides that the district court may "adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear." 15 U.S.C. § 1071(b)(1). The language of "issues in the proceeding" "directs the district court to consider all relevant issues brought by either party, regardless of whether those issues were before the TTAB." *Aktieselskabet*, 525 F.3d at 15.

The D.C. Circuit in *Aktieselskabet* did not address the issue of how the language of § 1071(b)(1) can be squared with the TTAB's compulsory counterclaim rule. Under the current version of § 1071(b)(1), the district court may consider both new issues and new evidence. 3 McCarthy on Trademarks and Unfair Competition § 21:20 (4th ed.) District courts do not, however, pass upon compulsory counterclaims under Trademark Rule 2.106(2)(i) that were not raised before the TTAB. 3 McCarthy on

Trademarks and Unfair Competition § 20:23 (4th ed.)  There is scant case law suggesting how parties' ability to raise new claims before the district court should be reconciled with the compulsory counterclaim rule.  In order to avoid rendering the compulsory counterclaim rule a nullity, the Court finds that it must be read as a limitation on parties' ability to raise new claims before the district court.  Both parties may raise new issues and evidence before the district court; those claims that are compulsory counterclaims under Trademark Rule 2.106(2)(i), however, must be raised before the TTAB or they are barred.  A contrary reading would vitiate the compulsory counterclaim rule. *Accord Sprinklets*, 806 F. Supp. at 663 (noting that the policy of avoiding piecemeal litigation and the compulsory counterclaim rule "itself would be contravened if a party was simply allowed to ignore it, preferring to take its chances with the district court").[8]

Odessky admits that OST's SHUSTOV mark, Registration No. 2885912, was pleaded in opposition to its application to register the SHUSTOFF mark.  (Joint Facts ¶ 25.)  Therefore,

---

[8] *Sprinklets* cites to *Wilson Jones* as being in accordance with its finding that the compulsory counterclaim rule bars invalidity defenses falling under the rule and not timely raised before the TTAB.  *Sprinklets*, 806 F. Supp. at 663.  As noted above, *Aktieselskabet* held that *Wilson Jones*, which relied on *Gold Seal*, was not an accurate statement of the law under § 1071(b)(1), as amended.  *Aktieselskabet*, 525 F.3d at 14.  The Court finds, however, that nothing in *Aktieselskabet* or other cases finding that parties may raise new issues before the district court indicates that this Court is no longer bound by the TTAB's compulsory counterclaim rule or that the holding of *Sprinklets* on this matter has been superseded.

claims against OST – Baltmark's predecessor in interest – attacking the validity of the SHUSTOV mark, including abandonment, were subject to the TTAB's counterclaim rule as of December 18, 2008, when the TTAB granted OST's motion to amend its Notice of Opposition to add ownership of Registration No. 2885912.  (Joint Facts ¶ 25; TTAB Opinion at 27.)  The Court therefore moves to the question of whether Odessky failed to comply with the requirements of the counterclaim rule as to its claims of abandonment.

The TTAB found, and Baltmark argues in this Court, that Odessky's petition for cancellation based on abandonment is barred by Odessky's failure to assert this claim in the TTAB litigation.  (Def. Mem. at 10.)  The TTAB did not consider Odessky's abandonment claim on the merits because it found that abandonment was a compulsory counterclaim not timely raised. (TTAB Opinion at 30.)  The Court gives deference to the TTAB's findings of fact but reviews conclusions of law de novo. *Glendale Intern. Corp.*, 374 F. Supp. 2d at 485.  Whether a claim should have been raised as a compulsory counterclaim is a legal conclusion not entitled to deference.  *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).

Odessky's abandonment claim proceeds upon two distinct theories: (1) OST did not use the SHUSTOV mark in commerce; (2) when OST merged with GEOCOM without executing a contemporaneous

assignment of the mark, it abandoned the mark.  The court will
consider each abandonment ground in turn.

### i.   Failure to Use SHUSTOV Mark

The Court agrees with the TTAB's conclusion that
Odessky's abandonment claim, to the extent that it is based on
OST's failure to use the mark, is barred by the TTAB's
compulsory counterclaim rule.  In the litigation before the
TTAB, Odessky sought to add a claim of abandonment based on
OST's alleged failure to use the SHUSTOV mark on vodka.  On
February 16, 2010, Odessky asserted that the November 29, 2009
deposition of Natalia Rybina ("Rybina"), the head of OST's
Department of Intellectual Property, revealed "entirely new
evidence" of OST's failure to use the SHUSTOV mark on vodka for
a period that may have been three years or more.[9]  (TTAB Opinion
at 28.)

The TTAB found that given Odessky's assertions in a
motion filed on April 3, 2009, claiming a lack of actual use of
the SHUSTOV mark by OST, "it is simply not plausible that the
Rybina testimony in October 2009 presented 'entirely new
evidence' as to [OST's] use of the mark on vodka."  (TTAB
Opinion at 29.)  The TTAB found that in the circumstances of the
case, Odessky had not promptly filed a motion to amend its

---

[9] The TTAB refers to ZAO "Gruppa Predpriyatij Ost" ("OST") as "Gruppa."
Because the parties have used the designation "OST" in the documents filed
with this Court, the Court will use "OST".

pleading to add the compulsory counterclaim.  The TTAB concluded
that Odessky could have pleaded its abandonment claim by April
3, 2009.  Moreover, the TTAB found that even if the Rybina
testimony did present new evidence, Odessky's over two-month
delay in moving to amend its pleading was not sufficiently
prompt under the compulsory counterclaim rule.

     The Court agrees with the TTAB's finding that
Odessky's abandonment claim, to the extent that it is based on
claims that OST did not use the SHUSTOV mark in connection with
vodka, was a compulsory counterclaim.  The Court finds that
Odessky's delay in adding this claim to its pleading runs afoul
of the rule's requirement that "the counterclaim shall be
pleaded promptly after the grounds therefor are learned."  37
C.F.R. § 2.106(2)(i).  Accordingly, this claim is barred and
Baltmark is entitled to summary judgment on Count III, to the
extent that it is based on grounds available to Odessky before
the TTAB.

### ii.  Lapse of SHUSTOV Mark During Merger

     To the extent that Odessky's abandonment claim is
based on grounds learned after the proceedings before the TTAB,
however, the Court finds that it is not barred in the instant
litigation.  Odessky's first theory of abandonment, based on
non-use of the mark, was subject to the TTAB's compulsory
counterclaim rule.  Odessky's second theory of abandonment,

however, is raised for this first time before this Court and is based on evidence filed with the USPTO of the assignment conveying the SHUSTOV mark from OST to Global CJSC. (Pl. Opp. at 6.)

When OST merged with GEOCOM on July 30, 2010, OST did not make an immediate assignment of the SHUSTOV mark to the successor entity, Global CJSC. (Pl. Opp. at 3.) Instead, on March 15, 2012, OST filed an assignment with the United States Patent and Trademark Office ("USPTO") conveying the SHUSTOV mark to Global CJSC. (Joint Facts ¶ 37.) This assignment identified the July 30, 2010 merger as the "nature of the conveyance." (Joint Facts ¶ 37.) Also on March 15, 2012, Global CJSC assigned the SHUSTOV mark to Baltmark. (Joint Facts ¶ 38.)

Odessky alleges that through the merger with GEOCOM, OST dissolved as a separate legal entity. Because OST dissolved without assigning the SHUSTOV mark to Global CJSC, in Odessky's view OST abandoned the mark.[10] Odessky claims that it did not learn of the basis for this claim until March 15, 2012, when OST filed the assignment conveying the SHUSTOV mark to Global CJSC, and identifying the July 30, 2010 merger as the nature of the conveyance. (Joint Facts ¶ 37.)

---

[10] Odessky has not cited any support for its theory that the merger also constituted an abandonment of the SHUSTOV mark because of the timing of the assignment. Baltmark has not challenged Odessky's legal theory. Therefore, the Court does not have occasion to consider the legal validity of Odessky's theory of abandonment.

The TTAB's compulsory counterclaim rule states that a counterclaim must be "pleaded promptly after the grounds therefore are learned."  37 C.F.R. § 2.106(2)(i).  The grounds for Odessky's abandonment claim were not known to Odessky until the assignment was filed with the UPSTO on March 15, 2012.  (Pl. Opp. at 5.)  The Court finds that this claim was not subject to the TTAB's compulsory counterclaim rule and that a validity challenge on this basis may be brought before this Court. Accordingly, the Court will deny Baltmark's motion for summary judgment to the extent that Count III is based on OST's failure to assign the SHUSTOV mark during its merger with GEOCOM.

## IV.   Conclusion

For the foregoing reasons, the Court will deny Odessky's Motion for Summary Judgment and will grant in part and deny in part Baltmark's Motion for Summary Judgment.

An appropriate Order will issue.

| | |
|---|---|
| | /s/ |
| November 26, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |