IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
ZAO ODESSKY KONJATSCHNYI      )
ZAWOD,                         )
                               )
     Plaintiff,                )
                               )
        v.                     )    1:12cv515 (JCC/IDD)
                               )
SIA "BALTMARK INVEST," et      )
al.,                           )
                               )
     Defendants.               )
```

**M E M O R A N D U M   O P I N I O N**

At issue in this case is the ownership of the SHUSTOV
trademark.  For the reasons set forth below, the Court concludes
that Defendant, SIA "Baltmark Invest" ("Baltmark") is the owner
of the mark.

On December 3, 2013, this matter came before the Court
for a bench trial on Plaintiff ZAO Odessky Konjatschnyi Zawod's
("Odessky") Amended Complaint against Defendant Baltmark.  This
case arises out of a Trademark Cancellation petition initiated
by Odessky seeking cancellation of Trademark Registration No.
2885912, which is currently held by Defendant Baltmark.  The
cancellation proceeding was consolidated before the Trademark
Trial and Appeal Board ("TTAB") with Baltmark's predecessor in
interest's opposition to Odessky's Trademark Application Serial

No. 78/240612.  The TTAB dismissed Odessky's petition to cancel, sustained Baltmark's predecessor in interest's opposition and refused registration to Odessky.  Odessky now petitions this Court to consider the application on the merits, and asks this Court to cancel Baltmark's Trademark Registration No. 2885912 and dismiss Baltmark's opposition to Trademark Application Serial No. 78/240612.  As a result of the Court's prior rulings, the following claims were submitted to the Court at trial: Count III (abandonment based on failure to timely assign the SHUSTOV mark), Count IV (bad faith in appropriating and registering the SHUSTOV mark); Count V (dismissal of opposition to application No. 78/240612); and Count VI (claim that Baltmark lacks rights in the SHUSTOV mark).[1]

After thoroughly reviewing and considering the relevant records and evidence, including exhibits and observing and evaluating witness testimony at trial, the Court makes the following findings of fact and conclusions of law.

---

[1] The Amended Complaint contains six causes of action.  On November 6, 2013, the Court dismissed Count I (fraud in obtaining registration) and Count II (fraud in Section 8 affidavit) with prejudice.  [Dkts. 161-162.]  On November 26, 2013, the Court granted Defendant's motion for summary judgment as to Plaintiff's abandonment claim (Count III) based on failure to use the SHUSTOV mark and denied Baltmark's motion for summary judgment as to Plaintiff's abandonment claim (Count III) based on OST's failure to assign the SHUSTOV mark during the merger with ZAO GEOCOM.  [Dkts. 171-172.]

## I.  Findings of Fact

**<u>Parties</u>**

1.   Plaintiff Odessky is a Ukrainian corporation with its principal place of business located at 13 Melniskaja, Odessa, 65005 Ukraine.  (Joint Stipulation of Undisputed Facts ¶ 1 [Dkt. 107.])

2.   Defendant Baltmark is a Latvian corporation with its principal place of business located at 29-5 Skolas St., Riga, Latvia, LS 1048.  (*Id.* ¶ 2; Tr. 35:2-3.)

3.   Elena Sorokina ("Sorokina") is the owner and sole shareholder of Baltmark.  (Tr. 34:15-19.)  Sorokina holds college degrees in civil engineering, law, and finance.  (Tr. 92:4-6.)  She also holds an MBA in strategic management of companies.  (Tr. 92:7-8.)  She has over twenty years business experience in Russia and has worked for over ten years as a manager.  (Tr. 92:11-13.)

4.   Global Closed Joint Stock Company ("Global") is a Russian closed joint-stock company with its principal place of business located at 5 ippodromnaya St., Tambov, Russian Federation 392028.  (Joint Stipulation of Undisputed Facts ¶ 3.)

5.   ZAO "Gruppa Predpriyatij Ost" ("OST") was a Russian closed joint-stock company with its principal place of business located at p. Chernogolovka, ul. Trety proyezd, d. 16,

142 432 Moskovskaya obl., Noginsky rayon, Russian Federation.
(*Id.* ¶ 4.)

**Trademark Application and TTAB Proceedings**

6.   On December 12, 2002, OST filed a trademark
application in the Russian Federation, Application No.
2002731063, to register the printed word "SHUSTOV" displayed on
a bell-shaped design.  (*Id.* ¶ 6.)

7.   The printed word "SHUSTOV" displayed on a bell-
shaped design was registered to OST in the Russian Federation as
Certificate No. 240948 on March 21, 2003, for use in connection
with: alcoholic beverages; alcoholic beverages comprising
fruits; spirits; honey drink; peppermint nastoyka; sake; rice
spirit; gin; rum; bitter nastoyka; liqueurs; whiskey; brandy;
aperitifs included in class 33; and vodka.  (*Id.* ¶ 7.)

8.   On April 22, 2003, plaintiff Odessky filed U.S.
Application Serial No. 78/240612 to register on the Principal
Register the SHUSTOFF MARK, IN TYPED FORM, for alcoholic
beverages (except beers); aperitifs; distilled liquors; spirits;
wines; whisky; vodka; gin; cocktails; liqueurs; distilled
beverages; bitters (schnapps and liqueurs); rum; liqueurs and
spirits (digestives); alcoholic extracts.  (*Id.* ¶ 5.)

9.   On May 23, 2003, OST filed U.S. Application
Serial No. 76/519958 based on its Russian registration and
alleged an intent to use the mark in commerce, pursuant to

4

Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(d), on or in connection with: alcoholic beverages; alcoholic beverages comprising fruits; spirits; honey drink; peppermint nastoyka; sake; rice spirit; gin; rum; bitter nastoyka; liqueurs; whiskey; brandy; aperitifs; and vodka. (*Id.* ¶ 8.)

10. Pursuant to Section 44(e), OST, through its duly authorized representatives, alleged in U.S. Application Serial No. 76/519958 that it had a bona fide intention to use the SHUSTOV mark in commerce in the United States on or in connection with alcoholic beverages; alcoholic beverages comprising fruits; spirits; honey drink; peppermint nastoyka; sake; rice spirit; gin; rum; bitter nastoyka; liqueurs; whiskey; brandy; aperitifs included in International Class 33; and vodka. (*Id.* ¶ 9.)

11. OST, through its duly authorized representative, alleged in U.S. Application Serial No. 76/519958 that it knew of no other person, firm, corporation or association that had the right to use the SHUSTOV trademark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, to cause mistake or to deceive. (*Id.* ¶ 10.)

12. In U.S. Application Serial No. 76/519958, OST, through its duly authorized representative, alleged that it

believed it owned or was entitled to use the trademark consisting of the printed word "SHUSTOV" displayed on a bell-shaped design that it sought to register. (*Id.* ¶ 11.)

13. In U.S. Application Serial No. 76/519958, OST, through its duly authorized representative, alleged that all statements made in OST's application were true, and that all statements made in OST's application made on information and belief were believed to be true. (*Id.* ¶ 12.)

14. On March 19, 2004, OST amended its identification of goods in connection with which it had a bona fide intention to use the SHUSTOV mark to: alcoholic beverages, namely distilled spirits; distilled rice spirits; aperitif wines; alcoholic aperitif bitters; alcoholic honey drink; peppermint schnapps; alcoholic fruit-based beverages; sake; gin; rum; liqueurs; whiskey; brandy; vodka in International Class 33. (*Id.* ¶ 13.)

15. On September 21, 2004, the printed word "SHUSTOV" displayed on a bell-shaped design was registered to OST as U.S. Registration No. 2885912 for use in commerce on or in connection with: alcoholic beverages, namely distilled spirits; distilled rice spirits; aperitif wines; alcoholic aperitif bitters; alcoholic honey drink; peppermint schnapps; alcoholic fruit-based beverages; sake; gin; rum; liqueurs; whiskey; brandy; vodka, in Class 33. (*Id.* ¶ 14.)

6

16.   On June 9, 2004, Odessky received notice from the U.S. Patent and Trademark Office that U.S. Application Serial No. 78/240612 would be published for opposition on June 29, 2004.  (*Id.* ¶ 15.)

17.   On July 28, 2004, OST filed its Notice of Opposition, which was instituted as Opposition No. 91161570, to Odessky's registration of the SHUSTOFF trademark in U.S. Application Serial No. 78/240612 on the grounds of priority and likelihood of confusion with OST's then pending SHUSTOV mark and design in U.S. Application Serial No. 76/519958.  (*Id.* ¶ 16.)

18.   U.S. Registration No. 2885912 issued to OST on September 21, 2004.  (*Id.* ¶ 17.)

19.   On January 11, 2005, Odessky filed its answer to OST's Notice of Opposition and alleged, as its affirmative defenses, that OST acted in bad faith in registering the SHUSTOV mark.  (*Id.* ¶ 18.)

20.   On October 6, 2006, OST moved for summary judgment in Opposition No. 91161570, alleging that it had established priority through its Russian registration of the SHUSTOV trademark, and that Odessky's registration of the SHUSTOFF trademark would cause a likelihood of confusion.  (*Id.* ¶ 19.)

21.   On February 22, 2007, Odessky cross-moved for summary judgment that OST acted in bad faith in obtaining U.S.

Registration No. 2885912 because OST did not own the SHUSTOV trademark. (*Id.* ¶ 20.)

22.   On April 15, 2008, the TTAB denied OST's motion for summary judgment and Odessky's cross-motion for summary judgment, citing disputed material facts in the record. (*Id.* ¶ 21.)

23.   On February 22, 2007, Odessky filed a Petition for Cancellation of U.S. Registration No. 2885912, which was instituted as Cancellation No. 92047126, alleging that OST acted in bad faith because it did not own the SHUSTOV mark, and that OST had committed fraud in obtaining U.S. Registration No. 2885912 because it did not have a bona fide intent to use the SHUSTOV mark on any product except vodka. (*Id.* ¶ 22.)

24.   On November 9, 2007, Opposition No. 91161570 and Cancellation No. 92047126 were consolidated. (*Id.* ¶ 23.)

25.   On October 24, 2008, OST filed a motion to amend its Notice of Opposition to add ownership of U.S. Registration No. 2885912, which had issued on September 21, 2004. (*Id.* ¶ 24.)

26.   On December 18, 2008, the TTAB granted OST's motion to amend its Notice of Opposition to add ownership of U.S. Registration No. 2885912. (*Id.* ¶ 25.)

27.   On February 16, 2010, Odessky filed a motion to amend its answer/amended answer or counterclaim to allege that

OST abandoned U.S. Registration No. 2885912 due to OST's nonuse of the SHUSTOV trademark, and in particular, OST's nonuse of the SHUSTOV trademark on any alcohol product other than vodka. (*Id.* 26.)

28.   On February 8, 2012, as part of its decision dismissing Odessky's petition for cancellation of U.S. Registration No. 2885912, and sustaining OST's opposition to U.S. Application Serial No. 78/240612 for registration of the SHUSTOFF mark, the TTAB denied Odessky's motion to amend its answer/amended answer or counterclaim to allege that OST abandoned U.S. Registration No. 2885912 due to OST's nonuse of the SHUSTOV trademark, ruling that Odessky did not promptly file its motion to amend to add its compulsory counterclaim for abandonment. (*Id.* ¶ 27.)

29.   On February 8, 2012, the TTAB issued a decision dismissing Odessky's petition for cancellation of U.S. Registration No. 2885912, and sustaining OST's opposition to U.S. Application Serial No. 78/240612 for registration of the SHUSTOFF mark. (*Id.* ¶ 28.)

30.   On April 11, 2012, an extension of the period of time to commence judicial review of Opposition No. 91161570 and Cancellation No. 92047126 was granted by the Office of the Solicitor of the U.S. Patent and Trademark Office. (*Id.* ¶ 29.)

31.   Odessky timely requested judicial review of the February 8, 2012, TTAB decision.  (*Id.* ¶ 30.)

32.   On July 30, 2010, OST merged with ZAO "GEOCOM" and was recognized and registered with the Principal State Registration Number 1106829004743 on the Russian Federation Unified State Register of Legal Entities as Global Closed Joint Stock Company or Global CJSC.  (*Id.* ¶ 31.)

33.   Once registered, to maintain U.S. Registration No. 2885912, OST was required to file between the fifth and sixth year after the registration a verified statement of ownership and continued use of U.S. Registration No. 2885912. (*Id.* ¶ 32.)

34.   On March 24, 2011, Registrant OST's Deputy Director, Elena Sorokina, submitted a Declaration of Use and Excusable Nonuse of Mark in Commerce under Section 8 for U.S. Registration No. 2885912.  (*Id.* ¶ 33.)

35.   On April 13, 2011, upon receipt of OST's March 24, 2011, Declaration of Use and Excusable Nonuse, the United States Patent and Trademark Office ("USPTO") issued an Office Action seeking, *inter alia*, information regarding the date of OST's last use of U.S. Registration No. 2885912, the steps being taken to resume use, and the approximate date when use was expected to resume.  (*Id.* ¶ 34.)

36.   OST, through its duly authorized representative, responded to the Office Action on October 13, 2011, quoting OST's March 24, 2011, Declaration regarding its continuing efforts to use U.S. Registration No. 2885912, stating that the facts in support of excusable nonuse: (1) U.S. litigation over Registrant's ownership of and right to use the mark which still continues and has been ongoing for the past 7 years; (2) the recent governmental shutdown of Registrant's manufacturing facilities due to new Russian government regulations; and (3) Registrant's continuing efforts despite these obstacles to make use of the mark in the United States on the goods listed in the registration.  (*Id.* ¶ 35.)

37.   On October 19, 2011, the USPTO issued a Notice Of Acceptance Under Section 8, stating: "[t]he declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. § 1058. The Section 8 declaration is accepted." (*Id.* ¶ 36.)

38.   On March 15, 2012, OST filed a new assignment conveying U.S. Registration No. 2885912 to Global, identifying the July 30, 2010, merger as the "Nature of the Conveyance," and attaching Principal State Registration Number 1106829004743. (*Id.* ¶ 37.)

39.   On March 15, 2012, the same date on which OST filed its assignment referred to above, Global filed a new assignment to convey U.S. Registration No. 2885912 to Baltmark, identifying an assignment of the entire interest and the goodwill of U.S. Registration No. 2885912 as the "Nature of the Conveyance," and attaching a March 12, 2012, assignment executed by Elena Ivanovna Sorokina.  (*Id.* ¶ 38; PX-11.)

**Assignment from Global CJSC to Baltmark**

40.   In May 2011, Anna Leonidova Batyreva ("Batyreva") and Yuri Zhupansky ("Zhupansky"), representatives of Global, approached Sorokina, Baltmark's representative and sole shareholder, regarding the sale of the SHUSTOV mark.  (Tr. 56:23-25; 57:1-5.)

41.   Baltmark entered into an agreement with Global to purchase the rights to the SHUSTOV mark both in and outside of the Russian Federation.  (Tr. 60:5-9.)

42.   In May 2011, Batyreva and Zhupansky brought Sorokina documents confirming that Batyreva was General Director of Global.  (Tr. 54:7-9.)  These documents included an excerpt from the register of the taxation service, Global's bylaws, and Batyreva and Zhupanksy's passports.  (Tr. 54:15-24; 55:4-6.) Sorokina also verified that Batyreva was the General Director of Global, as listed in the Uniform State Register of Legal

Entities of the Russian Federation, by checking the online register through the Internet at her workplace. (Tr. 56:11-18.)

43. As of June 26, 2012, the Uniform State Register of Legal Entities continued to list Anna Leonidova Batyreva as General Director under a section labeled "information on persons, entitled to act on behalf of the legal entity without power of attorney." (DX-14.) The extract from the Uniform State Register of Legal Entities was issued by the Interdistrict Inspectorate of Federal Tax services of Russia No. 46, Moscow, and contains the seal of the Federal Tax Service, Directorate of the Federal Tax Service of the City of Moscow. (DX-14.)

44. On May 12, 2011, Global held an Extraordinary General Meeting of Shareholders. (PX-14; Tr. 64:23-25.) The minutes of this meeting list as present: "Anna Leonidova Batyreva – Director General" and "representative on behalf of the shareholder of 'Global' CJSC Yuliya Viktorovna Zaitseva – Yuriy Igorevich Zhunansky under the Power of Attorney No. 77 AA 1473774 dated March 11, 2011." (*Id.*) At this meeting, the shareholders approved a transaction to assign the SHUSTOV mark and other trademarks to Baltmark. (*Id.*) Additionally, the shareholders resolved to entrust General Director Batyreva to issue a notarized power of attorney to Sorokina to take necessary actions in connection with the assignment. (*Id.*)

13

45.  On May 23, 2011, Baltmark and Global executed Confidential Agreement, Agency Contract No. 23/05.  (Tr. 37:19-25; PX-13.)  The Agency Contract states that Zhupansky, on the basis of Power of Attorney No. 77 AA 1035649 dated 3/30/2011, agrees to take certain "legal and other actions" in order to transfer trademarks, including the SHUSTOV mark to Baltmark.  (PX-13; Tr. 65:15-18.)

46.  On June 1, 2011, Batyreva, on behalf of Global issued a Power of Attorney No. 77 AA 2242872 to Sorokina to:

> Use the rights to trademarks and other means of individualization owned by Global Closed-Joint Stock Company, sign trademark assignment agreements, license and sublicense contracts regarding trademarks, represent the Company to the public body registering trademarks, make required payments, pay duties, fees and do all actions and formalities connected with this Power of Attorney on behalf of the company, submit and get all required documents, and sign all required documents.

(DX-13.)

47.  The June 1, 2011 Power of Attorney Batyreva issued to Sorokina was notarized on that date by Bulgakova Elena Gennadyevna, Notary Public of the city of Moscow.  (DX-13.)  The notarization states: "The Power of Attorney is executed on behalf of Closed Joint-Stock Company 'Global' and powers of its representative have been verified.  The person who signed this Power of Attorney has been identified and the legal capacity has

14

been verified." (DX-13; Tr. 94:6-16.) The Power of Attorney

bears the seal of the Global Closed Joint Stock Company. (DX-

13; Tr. 94:3-5.)

48. The June 1, 2011 Power of Attorney also bears an

apostille.[2] (DX-13.) The apostille signifies that the power of

attorney is verified or attested by the Ministry of Justice of

the Russian Federation. (Tr. 70:7-10.) The apostille is dated

August 13, 2013. (DX-13.) Sorokina testified that this means

that the Power of Attorney was still in force as of August 13,

2013. (Tr. 109:24-25; 110:1-2.)

49. Sorokina testified that in her experience having

documents notarized in the Russian Federation, the notary looks

to the founding documents, bylaws, certificate of registration

and the excerpt from the Uniform State Register of Legal

Entities to confirm the status of the general director. (Tr.

72:15-21; 73:17-25.)

50. Sorokina acted under the authority of the June 1,

2011 Power of Attorney, (DX-13), in establishing her rights to

the SHUSTOV mark. (Tr. 93:21-25.)

51. Sorokina, in her capacity as sole owner of

Baltmark, paid $500,000 to Global on May 23, 2011 as payment for

---

[2] An apostille is "a standard certification provided under the Hague
Convention for authenticating documents under in foreign countries." *United
States v. Jaensch*, 665 F.3d 83, 89 n.5 (4th Cir. 2011) (citing Black's Law
Dictionary 112 (9th ed. 2009)).

the sale, assignment and transfer of the SHUSTOV mark to Baltmark.  (Tr. 66:22-25; 67:1-2.)

52.  On May 12, 2012, Sorokina, pursuant to the June 1, 2011 Power of Attorney, (DX-13), executed an assignment to Baltmark on behalf of Global.  (PX-11.)  This document was submitted to the UPSTO on March 15, 2012.  (Tr. 77:22-23.)

53.  Sorokina was not aware of any competing claims to ownership of Global that would make the agreement to sell, transfer and assign the SHUSTOV mark executed pursuant to Batyreva's authority invalid.  (Tr. 79:14-21; 91:11-22; 100:7-9; 110:3-6; 110:7-10.)

54.  Sorokina was the sole witness at trial.  Having heard the witness and observed her demeanor, the Court finds her testimony believable and credible.  Sorokina's testimony was consistent with the documentary evidence presented in this case, was internally consistent and was unrebutted by other witness testimony.

## II. Analysis

One primary issue remains in this case – the validity of the assignment from Global to Baltmark.[3]  Plaintiff did not put on any evidence regarding the remaining issues in Counts IV and V.  The Court will therefore enter judgment in Defendant's

---

[3] This case comes before the Court on appeal from the decision of the TTAB pursuant to 15 U.S.C. § 1071(b).  None of the issues presented at trial had previously come before the TTAB.

favor as to those counts.  The Court now moves to the question of whether Global's assignment of the SHUSTOV mark to Baltmark was validly executed.

Plaintiff claims that Baltmark does not have standing to oppose the registration of its SHUSTOFF mark with the USPTO because it lacks rights in the confusingly similar SHUSTOV mark. Plaintiff points to the Decision of the Commercial Court of Khabarovsky Territory dated February 27, 2012 (PX-17) as the basis for its claims.[4]  This decision found that A.V. Zhmakov ("Zhmakov") not Yuliya Zaitseva ("Zaitseva") was the sole shareholder of Global at the time the SHUSTOV mark was sold to Baltmark.  (PX-17 ("From these explanation[s] its follows that Yu. V. Zaitseva sold 100% of shares to A. V. Zhmakov . . .").) Accordingly, in Odessky's view, the actions taken by the individuals authorized by Zaitseva to transfer the mark to Baltmark were invalid and the SHUSTOV mark remains the intellectual property of Global.

A.   Application of Foreign Law

Under the doctrine of international comity, the Court will defer to the findings of the Russian courts.  *See Hilton v. Guyot*, 159 U.S. 113, 164 (1895) (defining comity as the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation,

---

[4] This Russian court decision issued after the TTAB litigation had concluded.

having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws"). The Russian court decisions at issue — the February 27, 2012 decision by the Commercial Court of the Khabarovsk Territory and the subsequent affirmation on August 28, 2012 by the Sixth Arbitration Appeal Court in the city of Khabarovsk (PX-17, PX-18) — are, however, not dispositive of the issues before this Court. Those decisions found only that Zaitseva had sold her shares in Global to Zhmakov as of January 16, 2011. They do not specifically address the transfer of the SHUSTOV mark, nor do they discuss the implications of this sale on the actions taken by company representatives during the pendency of the litigation.

In short, Odessky asks the Court to infer that because the Russian court, in a decision issued approximately nine months after the transfer to Baltmark occurred, found that Zaitseva was not the sole shareholder of Global on January 16, 2011, she could not have issued a valid Power of Attorney to Zhupansky to represent her at the May 12, 2011 Global shareholders meeting. That shareholders meeting, therefore, could not have been valid either to approve the sale to Baltmark or to have Batyreva, the General Director of Global, issue a notarized Power of Attorney to Sorokina to take necessary steps to transfer the mark.

18

Odessky seeks, pursuant to Federal Rule of Civil Procedure 44.1, to introduce further statements of Russian civil law in order to provide support for this chain of inferences.[5] These statements come in the form of two declarations deemed admissible at trial, (PX-19 and PX-20), and post-trial declarations and excerpts from other Russian commercial court decisions and civil code sections. (Pl.'s Proposed Findings of Fact [Dkt. 189] Ex. A-I.) The post-trial materials on foreign law are untimely under the Court's scheduling order and are not part of the record of this case. (*See* [Dkt. 46].)

While the Court agrees that Russian law governs the assignment of the SHUSTOV mark from Global to Baltmark, Odessky has not given the Court sufficient materials upon which to rely.[6] "Where foreign law is applicable, the parties have the burden of sufficiently proving foreign law in such a way that the court may apply it to the facts of the case." *Riffe v. Magushi*, 859 F. Supp. 220, 223 (S.D. W. Va. 1994) (collecting cases). The Court is not under an obligation to undertake research of foreign law, although it may resort to any helpful source. *Id.*

---

[5] Rule 44.1 provides: "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1.
[6] Agency Contract No. 23/05, (PX-13), states that "all matters not regulated under this Contract shall be resolved in accordance with applicable legislation of the Russian Federation."

"Where foreign law is not sufficiently established, the court will apply the law of the forum state." *Id.*

Odessky has timely submitted the declaration of Markin Dmitriy Nikolaevich, a patent attorney of the Russian Federation, (PX-19), and the declaration of Mikhail Semenovich Bologov, Global's court-appointed competitive manager, (PX-20). Bologov is not an attorney.  In addition, Odessky has provided full English translations for the decision of the Commercial Court of Khabarovsk Territory, dated February 27, 2012, (PX-17), and the subsequent appeal, (PX-18), dated August 28, 2012.

The materials presented by Odessky are insufficient to allow the court to apply the law of the Russian Federation to the facts of this case.  Odessky has not presented a declaration from any individual identified as an expert on Russian law, nor are the Russian court cases provided immediately applicable to the facts at hand.  While the Court recognizes the full effect of the decisions of the Commercial Court of the Khabarovsk Territory, the Russian legal materials provided by Odessky are insufficient to allow the Court to extrapolate from the Russian decision a conclusion on the matters before it; accordingly, the Court will apply Virginia law.

B.   Baltmark Owns the SHUSTOV Mark

Moreover, evidence adduced at trial was insufficient to prove that Baltmark does not have rights in the SHUSTOV mark.

The only witness at trial was Elena Sorokina, Baltmark's sole shareholder, whose testimony the Court found believable and credible.  Sorokina testified that she purchased the SHUSTOV mark from Batyreva and Zhupansky, acting on behalf of Global. Batyreva's claim of authority was supported both by the notarized power of attorney, which states that the "[l]egal capacity of Closed-Joint Stock Company 'Global' and the powers of its representative have been verified . . . the person who signed this Power of Attorney has been identified and the legal capacity has been verified," (DX-13), and by the Uniform State Register of Legal Entities, (DX-14).  Sorokina testified at trial that the Uniform State Register of Legal Entities of the Russian Federation listed Batyreva as General Director at the time the transaction occurred.  (Tr. 56:11-18.)  As of June 26, 2012, Batyreva remained listed on the Register.  (DX-14.)

These documents, in combination with Sorokina's testimony support Baltmark's claim to rights in the SHUSTOV mark.  Evidence presented by Odessky – primarily in the form of the Russian court decisions – is insufficient to show that this transaction was invalid or that any other entity has rights in the SHUSTOV mark superior to Baltmark.  Tellingly, Global – the entity that Odessky claims is the actual owner of the mark – has not entered an appearance in this action.  Global was served with notice of this proceeding on July 23, 2013 via e-mail as

authorized pursuant to this Court's order of July 18, 2013.
(Proof of Service ZAO "Global" [Dkt. 120].)  Neither Global nor
A.V. Zhmakov (the individual Odessky claims was the true owner
of Global during the time the SHUSTOV mark was assigned) has
attempted to assert a claim to the SHUSTOV mark in any way;
there is no evidence on record that Global has challenged the
validity of this transaction.  (Tr. 90:14-21.)  On the strength
of Sorokina's testimony, and the listings in the Uniform State
Register of Legal Entities the Court finds that Baltmark has
full rights to the SHUSTOV mark.  Odessky's arguments on the
basis of the Russian court decisions are insufficient to meet
their burden of showing that Global retains ownership of the
mark, particularly in light of Global's failure to claim such
ownership.

     C.  <u>Agency</u>

     Moreover, the application of Virginia's agency
principles leads to the same result.  The doctrines of apparent
authority and apparent agency are closely related yet distinct
under Virginia law.  *See Sanchez v. Medicorp Health Sys*. 270 Va.
299, 304 (2005).  Apparent agency is also known as agency by
estoppel: "any agency created by operation of law and
established by a principal's actions that would reasonably lead
a third person to conclude that an agency exists." *Sanchez*, 270
Va. at 304 (citations omitted).  Apparent authority, by

22

comparison, "presupposes the existence of an agency relationship and concerns merely the [scope of] authority of the agent." *Id.* It is the authority that a "third party reasonably believes an agent has, based on the third party's dealings with the principal even though the principal did not confer or intend to confer the authority." *Id.* at 303. Batyreva's situation vis-à-vis Global sounds in agency by estoppel.

On the record before the Court, Global would be estopped to deny that Batyreva was acting as its agent when she approved the sale of the SHUSTOV mark to Baltmark. Even if, as Plaintiff contends, the operation of Russian law means that Batyreva was without authority to act on behalf of Global on the dates in question, Global's actions would reasonably lead a third person to conclude that she was validly acting on behalf of the company.

Batyreva was listed as Global's General Director in the Uniform State Register of Legal Entities. The Notary Public and Sorokina relied on this register in concluding that Batyreva had the authority to transfer the SHUSTOV mark in issuing the June 1, 2011 Power of Attorney. Batyreva's name remained listed in the Uniform State Register of Legal Entities as of June 26, 2012 – nearly four months after the decision of the Commercial Court of Khabarovsk Territory was issued. Global's actions in listing Batyreva's name in the Uniform State Register of Legal

Entities or allowing her name to remain there are actions sufficient to allow a reasonable person to conclude that Batyreva had authority to act on behalf of the company. Sorokina testified that in addition to Batyreva's representations, she relied on this documentation showing that Batyreva acted on behalf of Global. Moreover, Global has never actually denied Batyreva's authority to act on its behalf. Therefore, the Court finds that an agency relationship exists between Batyreva and Global and the SHUSTOV mark was validly transferred to Baltmark.

D.   Abandonment

Finally, Odessky asserts that OST – Baltmark's predecessor in interest – abandoned the SHUSTOV mark by failing to assign the mark to Global during OST's merger with ZAO GEOCOM. The record reflects that OST merged with GEOCOM on July 30, 2010. (Joint Stipulation of Undisputed Facts ¶ 31.) On March 15, 2012, OST assigned the SHUSTOV mark to Global. (*Id.* ¶ 37.) That same date, Global filed an assignment to convey the SHUSTOV mark to Baltmark. (*Id.* ¶ 38.) Odessky asserts that OST ceased to exist as a separate legal entity upon the merger with GEOCOM, and therefore could not have executed the March 15, 2012 assignment to Global.

Odessky has failed to present sufficient evidence on this claim. It is well established that "a merger of one

24

corporation into another effects a presumed passage of all common law and federally registered trademark rights to the acquiring corporation without the need for a formal assignment or its recordation." *McCarthy on Trademarks and Unfair Competition* § 18:37 (4th ed. 2005); *see also American Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446, 453 (6th Cir. 1942). Accordingly, when OST merged with GEOCOM, all trademark rights passed to the successor entity, Global.

### III. Conclusions of Law

1.   The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1071(b), which "permits a party in a trademark suit to initiate a civil action in the place of an appeal of the TTAB's determination to the Federal Circuit." *Swatch AG v. Beehive Wholesale, LLC*, No. 12-2126, 2014 WL 46454, at *2 (4th Cir. 2014). "The district court has authority independent of the PTO to grant or cancel registration and to decide any related matters such as infringements and unfair competition claims." *Id.*

2.   The Court finds in favor of Defendant as to Plaintiff's claim of Abandonment (Count III) because Plaintiff failed to present any evidence that the SHUSTOV mark did not pass to Global CJSC during the merger between OST and ZAO GEOCOM.

3.    The Court finds in favor of Defendant as to Plaintiff's Bad Faith claim (Count IV) because Plaintiff has failed to put forth evidence on this claim.

4.    The Court finds in favor of Defendant as to Plaintiff's request for dismissal of opposition to application No. 78/240612 (Count V) because Plaintiff has not proven any of its claims that would entitle it to such relief.

5.    The Court finds in favor of Defendant as to Plaintiff's claims that Defendant lacks rights in the SHUSTOV mark (Count VI).  Plaintiff has not shown that any entity has rights in the SHUSTOV mark superior to those of Baltmark.

6.    Accordingly, U.S. Registration No. 2885912 is valid and continues in full force and effect for the SHUSTOV mark with the bell-shaped design.  Baltmark has priority of use in the SHUSTOV mark displayed on a bell-shaped design pursuant to Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(d).

7.    The Court upholds the decision of the Trademark Trial and Appeal Board to deny registration to Odessky for U.S. Trademark Application No. 78240612.[7]

---

[7] The United States Court of Appeals for the Fourth Circuit recently clarified the standard of review that district courts must apply to decisions of the TTAB in actions brought under 15 U.S.C. § 1071(b) in *Swatch AG v. Beehive Wholesale, LLC.  See Swatch*, 2014 WL 46453, at *3; *Timex Group USA v. Focarino*, No. 1:12-CV-1080, 2014 WL 130977, at *1 (E.D. Va. Jan. 13, 2014). *Swatch* held that "where new evidence is submitted, de novo review of the entire record is required because the district court cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts." *Swatch*, 2014 WL 46453, at *3 (citations omitted).  This Court decided all of the claims previously submitted to the TTAB in Baltmark's

8.    Baltmark's Motion to Strike Proposed Findings of Fact, [Dkt. 190], is granted in part and denied in part. Baltmark's Motion is granted with respect to Plaintiff's additional exhibits on foreign law and denied with respect to Plaintiff's proposed findings of fact.

An appropriate Order will issue.


                          _____/s/_____
February 21, 2014              James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE

---

favor at the motion to dismiss stage or upon *de novo* review of a conclusion of law at summary judgment.  Accordingly, the Court has had no occasion to revisit the factual findings in the TTAB record.